**Jesse Dewayne JACOBS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69864.**

Court of Criminal Appeals of Texas, En Banc.

April 11, 1990.

John D. Mac Donald, II, New Caney, F. Vincent Norris, Conroe, for appellant.

Peter C. Speers, III, Dist. Atty., and Thomas D. Glenn, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

A jury found appellant, Jesse Dewayne Jacobs, guilty of capital murder. The death penalty was assessed as punishment. On appeal to this Court, appellant raises twelve points of error. We find all points to be without merit and affirm the conviction.

In his first point of error, appellant asserts that the trial court erred in overruling his motion to suppress his confessions based on involuntariness.

The facts of this case reveal that appellant offered to make a deal with the authorities regarding information about the murder of the deceased, Etta Urdiales. Testimony by the arresting officers revealed that appellant offered to "tell us what we wanted to know and show us what we wanted to see" in exchange for certain assurances. Appellant requested that (1) the district attorney seek the death penalty and (2) allow a one hour visit alone with his girlfriend Lisa.

In *Fisher v. State*, 379 S.W.2d 900 (Tex. Cr.App.1964), this Court stated its position on the proper test to be applied when determining whether a confession was improperly obtained through inducement. The Court held:

"To render a confession inadmissible upon the ground that it was induced by the promise of some benefit to defendant, such promise must be positive, and must be made or sanctioned by a person in authority and it must also be of such character as would be likely to influence the defendant to speak untruthfully." 379 S.W.2d 902, citing 1 Branch 2d. Sec. 88.1 at 95.

Before applying the *Fisher* test to each of the purported inducements we note that appellant approached the State for assurances that certain conditions be met before he would make inculpatory statements or lead investigators to the deceased's body. Because appellant acted in the role of dealmaker our analysis is cast in a different light. Caselaw in this area has generally reflected fact situations where the State stood accused of soliciting confessions in exchange for promises of leniency or special deals. See *Smith v. State*, 779 S.W.2d 417, 427 (Tex.Cr.App.1989); *Hardesty v. State*, 667 S.W.2d 130 (Tex.Cr.App.1984); *Walker v. State*, 626 S.W.2d 777 (Tex.Cr. App.1982); *Fisher*, 379 S.W.2d at 901; *Searcy v. State*, 28 Tex.App. 513, 13 S.W. 782 (1890). Rather than reject appellant's position based on his role as solicitor, we will evaluate his claim in light of his bargaining position.

■ We now turn to an examination of each promise that appellant urges rendered his confession involuntary. At the hearing on the motion to suppress the testimony showed that appellant met with the district attorney who told him that he would seek the death penalty if the evidence indicated that capital murder was the appropriate

charge. The record clearly reflects that the district attorney never positively and unequivocally promised appellant that he would seek the death penalty. In *Freeman v. State*, 723 S.W.2d 727 (Tex.Cr.App. 1986), the accused was concerned with avoiding a charge of capital murder. This Court held that the State's "promise" not to charge the defendant with capital murder was simply an assurance under the law and evidence that no such charge would be lodged in that case. *Freeman*, 723 S.W.2d at 730. This case is analogous to *Freeman* in the sense that the district attorney was constrained to seek an indictment that comported with the circumstances of the case. See Article 2.01, V.A.C.C.P.

Without reaching the remaining prongs of the *Fisher* test we hold that appellant has failed to demonstrate the party in authority made a positive and unequivocal promise to seek the death penalty. See *Smith v. State*, 779 S.W.2d 417, 427 (Tex.Cr.App.1989).

■ Appellant's second *Fisher* argument is based on his request that the district attorney set up a visit with his girlfriend. The record demonstrates that the district attorney, under questioning by appellant, agreed that he had promised to have appellant's girlfriend visit and that he was a person in authority.[1] We also read the record as reflecting the district attorney's agreement, though rather oblique, that the visit of appellant's girlfriend was of benefit to appellant. Having satisfied the first three prongs of the *Fisher* test, appellant now argues that the meeting with his girlfriend was of such great value that it would influence him to speak untruthfully. We reject appellant's argument. First, the visit of appellant's girlfriend would occur as a normal policy. Appellant's experience with the criminal justice system was such that he would have been aware of his rights to visitation while incarcerated. It stretches credulity to believe that appellant

would incriminate himself in order to receive a benefit that he had to know was his as a matter of course. *Smith*, 779 S.W.2d at 428. Second and most important, the appellant in this case *cast himself in the role of entrepreneur* and as such has diminished ability to complain on appeal that he was "influenced" or "induced" to do anything. The State did not initiate the meeting that led to the offer of appellant or proffer any inducements that supplanted appellant as the instigator in this arrangement. Appellant has not met the final prong of the *Fisher* test.

■ The trial court is the sole judge of the credibility of witnesses in a pretrial hearing and absent a showing of an abuse of discretion the trial court's findings will not be disturbed. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Cr.App.1986); *Nichols v. State*, 754 S.W.2d 185, 189 (Tex.Cr. App.1988). Appellant's point of error number one is overruled.

In his second point of error appellant contends the trial court erred in failing to grant his motion to suppress based on an alleged invalid waiver of his right to counsel. Appellant concedes that his testimony concerning his verbal request for counsel during his appearance before two different magistrates was controverted by officers present at the hearing. Appellant, however, argues that his refusal to sign the bottom of the magistrate warning forms creates a reasonable presumption that appellant did not intend to waive his right to counsel or talk to officers without counsel being present. Further, appellant contends that, having invoked his right counsel, his response to subsequent police questioning was not a showing of a valid waiver of counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We disagree and do not accept appellant's argument that *Edwards v. Arizona* controls this case.[2]

---

1. The record reflects that the district attorney did in fact arrange and pay for the visit of appellant's girlfriend. The funds came out of the District Attorney's Organized Crime Unit's assets account.

2. Appellant's reliance on *Edwards* is misplaced. In *Edwards* the facts showed an invocation of right to counsel that was subsequently violated by the authorities. *Edwards*, 101 S.Ct. at 1882. In this case, however, the initial invocation of right to counsel is what is in dispute.

■ A defendant may waive his Miranda rights provided the waiver is made voluntarily, knowingly and intelligently. *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Only if the "totality of circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Moran*, 106 S.Ct. at 1141.

■ The State presented witnesses who testified that appellant was warned on numerous occasions, by both law enforcement officers and several magistrates, of his right to counsel and right to remain silent. The testimony consistently demonstrated that appellant was not confused or under duress at the time warnings were administered. In addition, appellant has not presented any caselaw supporting his theory that his refusal to sign the magistrate warning form invoked his Fifth Amendment right to counsel.

The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing, and absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. In light of appellant's experience with the criminal justice process, the ambiguous nature of his testimony regarding the right to counsel, the rational state of appellant, and testimony indicating multiple warnings were given to appellant, we can find no evidence to show the trial court engaged in an abuse of discretion in denying appellant's motion to suppress. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Cr.App.1986); *Nichols v. State*, 754 S.W.2d 185, 189 (Tex.Cr.App. 1988). Appellant's point of error number two is overruled.

In points of error numbers three and seven appellant contends that the trial court improperly granted the State's challenge to Sammy Gilbert based on (1) Gilbert's opposition to the death penalty and (2) Gilbert's disqualification under Article 35.16(a)(5) and (a)(11), V.A.C.C.P.

In point of error number seven, appellant specifically argues that the evidence was insufficient to sustain the State's challenge to Gilbert based on his inability to read and write. Article 35.16(a) 5, 11, V.A.A.C.P. The record reveals that during voir dire Gilbert was equivocating on his answer to special issue number two. Gilbert indicated that he was confused about question two when the trial court intervened and asked Gilbert to read special issue two from a poster board. Gilbert testified that a stuttering problem interfered with his ability to read. The trial judge requested that Gilbert read issue number two silently and explain the meaning. Gilbert responded:

"The Court: Well, as I remember it, the prosecutor did read it to him. So, tell us what it means, that No. 2?

"The Juror: You have to convince the jury within a reasonable doubt that the defendant, you know, is guilty or not.

"The Court: Whether the defendant is guilty or not?

"The Juror: Uh-huh.

"The Court: Is that what you said?

"The Juror: Yes."

After sustaining the State's challenge for cause the trial court made express findings related to that decision. The court explained:

"The Court: Let the record show that the juror, Sammy Gilbert, has been excused from the courtroom, that counsel for the State and Counsel for defense are here. With regard to the examination of Gilbert, let the Record further show that Mr. Gilbert was asked to read No. 2 several times. To make sure the Record is clear about what he was being asked to read, let the Record show that there is a poster board on an upright tripod near the witness seat which contains the second special issue to be submitted on the punishment part of a capital murder case. And that the special issue reads substantially as follows: 'Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.' And let the Record further

show that the court understood the—the court observed that the witness had lengthy pauses. I am not sure whether they're reflected in court reporter's notes or not. But there were pauses of a minute or more at various times when either the court or the prosecutor asked the witness to read special Issue No. 2. That the witness indicated at one time perhaps off the Record, beckoning to the Court, indicated that he could not read because he had a stuttering problem. Therefore, the court asked if he would just give the substance of the question rather than the substance of the special issue—rather than reading it verbatim. And as the court understood the witness, the witness said that it had something to do with guilt and that it had something to—later, after another long pause, that it had something to do with being opposed to the death penalty. So that it clearly appeared to the court that the witness was not only unable to read out loud the Special Issue No. 2, but that he also was unable to comprehend the import of Special Issue No. 2...."

 It is the burden of the party seeking exclusion to demonstrate that such course is proper. *Jackson v. State*, 548 S.W.2d 685, 697 (Tex.Cr.App.1977). The inability of a veniremember to read and write is a proper challenge for cause. *Brock v. State*, 556 S.W.2d 309, 313 (Tex. Cr.App.1977). The record in this case establishes the challenged veniremember's inability to read and write. The trial court did not abuse its discretion in sustaining the State's challenge for cause. *Allridge v. State*, 762 S.W.2d 146, 165 (Tex.Cr.App. 1988). Appellant's point of error number seven is overruled.[3]

In point of error number four appellant argues that the trial court erred in granting the State's challenge for cause to venireperson Michelle Dupree.

 The proper standard to be used in disqualifying prospective jurors in death penalty cases is to determine whether their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions given and the oaths taken. *Bell v. State*, 724 S.W.2d 780, 794 (Tex.Cr.App.1986) cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), *Sharp v. State*, 707 S.W.2d 611, 620 (Tex.Cr.App.1986) cert. denied, —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). "[T]his standard ... does not require a juror's bias [or prejudice] be proved with 'unmistakable clarity.'" *Ellis v. State*, 726 S.W.2d 39, 43 (Tex.Cr.App.1986) cert. denied, 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987), quoting *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). On appeal, we recognize that great deference must be given to the trial court judge who is in the best position to see and hear the prospective jurors and to evaluate their responses. We will reverse a trial court's ruling on these issues only when the record shows a clear abuse of discretion on the trial court's part. *Callins v. State*, 780 S.W.2d 176, 194 (Tex.Cr.App.1986) (opinion on rehearing).

 Under repeated questioning by the State, Dupree repeatedly answered that she would not be able to answer the special issues in the affirmative in spite of any evidence to the contrary. Dupree stated:

"Q. [by the State] I guess when we kind of boil all the fat off and get right down to the barebones, is it fair to say that you wouldn't want to be involved in any kind of process where the potential would be to give somebody the death penalty?

"A. No.

"Q. You would not want to be?

"A. No.

"Q. And if there were any avenue that you could veer off and keep from giving that person the death penalty, would you take that avenue?

"A. Yes."

**3.** Since Gilbert was properly challenged for cause under Article 35.16, V.A.C.C.P., we do not reach the merits of appellant's point of error number three which entails a question of constitutional dimension. Point of error number three is overruled.

In attempting to rehabilitate Dupree, appellant's trial counsel elicited the following:

"Q. All right. You've got to answer both questions?

"A. Yes.

"Q. Okay. Now, I think you said to number one—you take them one at a time?

"A. Okay.

"Q. Right. If you were—if the evidence—it was good evidence and it convinced you beyond a reasonable doubt, you could say yes?

"A. Uh-huh.

"Q. Am I right?

"A. Yes.

"Q. You wouldn't vote no if you were convinced beyond a reasonable doubt that it ought to be yes?

"A. Yes, I would vote yes.

"Q. Okay. And then—okay. And then number two, same question. If you were convinced with good evidence beyond a reasonable doubt, just like the law says, if you had good evidence and that answer to number two should be yes, would you vote yes?

"A. I don't think so. No.

"Q. Why? Why would you vote no?

"A. I just don't believe in killing nobody."

Dupree's personal views would have prevented or substantially impaired the performance of her duties as a juror. "A juror who will ultimately be guided by his or her personal views is not qualified to sit on a jury...." See *Landry v. State,* 706 S.W.2d 105, 108 (Tex.Cr.App.1985). The trial court did not abuse its discretion in excusing veniremember Dupree. Appellant's point of error number four is overruled.

 In point of error number five appellant contends that the State's challenge for cause to venireperson Kathie Roark should not have been granted. Roark consistently stated during voir dire examination that she would hold the State to a standard of proof higher than "beyond a reasonable doubt." The following excerpts are illustrative of Roark's position:

"Q. [by the State] Okay. Now, Judge Keeshan has talked to you in terms of the burden of proof that's on the State that's beyond a reasonable doubt. That doesn't mean beyond all doubt. Would you require that we prove to you beyond all doubt?

"A. I think so.

"Q. You feel like that you would require us to prove his guilt beyond all doubt as opposed to beyond a reasonable doubt?

"A. I think that's true.

\* \* \* \* \* \*

"Q. [by the State] Well, do you feel like that would substantially affect the way you answered No. 2? In other words, do you feel like that you would probably answer No. 2 'no' so that you wouldn't have to face the night of the execution and that type of situation?

"A. No. Like I said before, I believe if you could prove to me beyond a shadow of a doubt that he really and truly did it, then I could say 'Give him the death penalty.' But I still think that it would take me a long time of sleepless—there would be a lot of sleepless nights."

After several exchanges of the kind detailed above the State challenged Roark for cause. The trial court upheld the State's challenge for cause only after engaging in extensive discussion with Roark as to her understanding as to the burden of proof applicable to the case. In making a record regarding Roark's views the trial court elicited the following testimony:

"THE COURT: But if it came to a death penalty case, your feelings of conscience and heart are so strong that the State would have to remove not just reasonable doubt, but would have to remove all doubt from your mind?

"MR. MCDOUGAL: I'm going to object to the phrasing of that question by the Court and ask the Court to phrase it in such a manner as 'Could she apply that same standard that she could in a regular case to another case?' I feel the Court is trying to suggest an answer on

behalf of the juror as well as rehabilitate her for the State.

"THE COURT: That will be overruled. Do you feel—I'm going to try to re-phrase my question, because I've forgot-ten part of it. If it were a death penalty case, do you feel in a death penalty case as opposed to what we just established, that in a death penalty case that you would require the State to remove all doubt from your mind before you could convict in that case? Before you could find him guilty in that case?

"THE JUROR: Well, like I said a while ago, I don't know the difference between "reasonable" and the "all," but I just feel if there were any doubt, that I wouldn't. That's all I know. If I felt there were any doubt, then I just do not say guilty, if I thought there were any doubt."

The State is entitled to have a prospec-tive juror excluded for cause if the juror has a bias or prejudice against any phase of the law upon which the State is entitled to rely. If a prospective juror manifests an intention to hold the State to a stricter standard of proof than that of beyond a reasonable doubt, then that juror is subject to a challenge for cause under Article 35.-16(b)(3), V.A.C.C.P. *Wilkerson v. State,* 726 S.W.2d 542, 545 (Tex.Cr.App.1986) cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Woolls v. State,* 665 S.W.2d 455, 465 (Tex.Cr.App.1983), cert. de-nied, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 889 (1984). The record supports the trial court's decision to sustain the State's challenge for cause. *Goodman v. State,* 701 S.W.2d 850, 859 (Tex.Cr.App. 1985).

In appellant's point of error num-ber six, appellant argues that the trial court erred in granting the State's chal-lenge for cause to veniremember Margie Johnson. Appellant contends that Marie Johnson would not have been "prevented or substantially impaired by her views on the death penalty from fully discharging the obligation of a Texas juror in a capital case according to her instructions and her oath."

Veniremember Johnson testified as fol-lows:

"Q. [by the State] So consequently when you got right down to it and you got that close, you know that this is the last time out, if you don't turn right here and go to the life sentence, he's going to get the death penalty, right?

"A. Right

"Q. You don't feel like you could an-swer yes to No. 2?

"A. I don't think I could answer yes to that. I don't so.

"Q. Even if the evidence was there you still don't think it—

"A. I really don't think I could.

"Q. And so consequently you would vote a no to that?

"A. Yes.

"Q. To keep him form getting the death penalty?

"A. I think so.

"Q. And knowing good and well that one no answer would get him the life sentence as opposed to the death penal-ty?

"A. That's right.

"Q. Okay. And that's basically because of the way you feel in your heart about the death penalty?

"A. That's right.

"Q. And you're just being honest with us?

"A. I am."

Appellant's efforts at rehabilitating the prospective juror did nothing more than clarify Johnson's opposition to the death penalty. Under questioning by appellant, Johnson stated:

"Q. [by Mr. McDougal] It boils down to the fact that no evidence at all is going to convince you beyond a reasonable doubt that answer ought to be yes; is that what you're saying?

"A. Yes.

"Q. No matter what this accused per-son is like or how nice the deceased per-son is or anything long that line? You feel this is the most horrible person in the world, you couldn't answer yes to that question?

"A. No."

Our reading of the record, accompanied with the trial judge's opportunity to observe the veniremember's demeanor, leads us to the conclusion that the trial court did not abuse its discretion when it sustained the State's challenge for cause. See *Wainwright v. Witt*, 469 U.S. at 431–35, 105 S.Ct. at 855–58. Appellant's point of error number six is overruled.

■ In point of error number eight, appellant contends that the trial court erred in failing to sustain his challenge for cause to veniremember Anthony Carl Hartzo. Appellant based his challenge for cause on the inability of Hartzo to consider the full range of punishment applicable to the instant case.

Before considering the substantive issue in this point of error, we must determine whether appellant has properly preserved error. In *Harris v. State* (Tex.Cr.App. 1989, delivered June 28, 1989) (pending on motion for rehearing), slip op. at pages 21–23, Judge Duncan, writing for the majority, clearly delineated the requirements for preserving error due to a trial court's denial of a defense challenge for cause. We held that in order to warrant a reversal by this Court for the trial court's erroneous denial of an appellant's valid challenge for cause the appellant must show:

"1. The voir dire of the individual venireperson was recorded and transcribed.

"2. The appellant at trial asserted a clear and specific challenge for cause clearly articulating the grounds therefor.

"3. After the challenge for cause is denied by the trial court, appellant uses a peremptory challenge on that juror.

"4. All peremptory challenges are exhausted.

"5. When all peremptory challenges have been exhausted, appellant makes a request for additional peremptory challenges.

"6. Finally, the defendant must assert that an objectionable juror sat on the case. The appellant should point out to the trial court he is being forced to try the case with a juror seated whom he would have exercised a peremptory challenge had he one." *Harris,* slip op. at 23.

As the State correctly points out in their brief, appellant exercised a peremptory strike against Hartzo after the challenge for cause was denied and subsequently exercised the peremptories allotted under Article 35.15(a), V.A.C.C.P.[4] Appellant, however, failed properly to preserve error on this point when he did not request additional peremptory challenges and point out to the trial court that he was forced to try the case with a juror against whom he would have exercised a peremptory challenge had he had one. Appellant failed to preserve error for review. *Harris v. State,* slip op. at 23. Appellant's eighth point of error is overruled.

■ In point of error number nine, appellant argues that the trial court erred in not granting a motion for mistrial based on the admission of extraneous offenses in the testimony of Judge James Dinkins.

Appellant was brought before Judge Dinkins for purposes of receiving his magistrate's warning. Appellant complains that the following testimony produced evidence that had a prejudicial impact on the jury that was too great to be disregarded. Judge Dinkins testified, in part, as follows:

"Q. And I take it than that you were Justice of the Peace for Precinct Two back on September the 13th of 1986?

"A. That's correct.

"Q. Did you have occasion on that date to be introduced to an individual by the name of Jesse Dewayne Jacobs?

"Q. (sic) Yes, I did.

"Q. Could you tell us how that occurred and approximately when?

"A. It occurred, I think, at approximately 8:00 p.m. that evening; and I was called to the Conroe police department to administer a magistrate's warning to him.

4. The record reflects that appellant actually exercised 16 peremptories during voir dire.

"Q. Okay. Had you previously accepted a complaint charging Mr. Jacobs with a specific offense?

"A. That's correct.

"Q. And what offense was he charged with?

"A. Well I have approximately five charges—

"Q. No, just a minute—

"THE COURT: Just a moment.

"Q. (by Mr. Speers) At the time that you went to administer the magistrate's warning, what offense did you advise him that he was charged with?

"A. Capital murder."

Appellant did not enter a contemporaneous objection to the testimony mentioning other charges. Only after the direct examination of Judge Dinkins was complete did appellant bring to the court's attention the alleged error. To preserve error, an objection must be made at the first opportunity. *Woolls v. State*, 665 S.W.2d 455 (Tex.Cr. App.1983) cert. denied 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 889 (1984). Appellant has waived error.

Even assuming that error was not waived appellant refused an instruction to to the jury to disregard the comment of Judge Dinkins.

We have held in the past that any error in asking an improper question or in admitting improper testimony may generally be cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard. *Livingston v. State*, 739 S.W.2d 2d at 335, citing *Guzmon v. State*, 697 S.W.2d 404, 408 (Tex.Cr.App.1985); *Williams v. State*, 643 S.W.2d 136, (Tex.Cr. App.1982). Appellant's refusal of the curative instruction has waived any error. Appellant's point of error number nine is overruled.

 In point of error ten, appellant complains that the trial court erred in denying a motion for mistrial based on the State's improper jury argument. The closing argument reflects both the offending comment and the objection lodged by appellant:

"[by Mr. Aylor] ... I think it was burglary that he went to prison on and then we're talking about a murder where he intentionally killed somebody while he was robbing them. In fact, he said he was an acquaintance, apparently a friend. I think a mentally retarded kid, if I'm not mistaken.

"MR. MCDOUGAL: Your Honor, I object to that. That was not in evidence. That was not brought out by anybody in the evidence.

"THE COURT: Objection sustained.

"MR. MCDOUGAL: I ask the jury be instructed to disregard that.

"THE COURT: Disregard [the] last comments of the prosecutor.

"MR. MCDOUGAL: Specifically regarding what kind of person that was killed, your Honor.

"THE COURT: Specifically regarding the comments about possibly retarded or whatever the comment was of the prosecutor in that regard; is that correct?

"MR. MCDOUGAL: And we would further move for a mistrial based on the improper argument of counsel.

"THE COURT: That will be denied."

Proper jury argument falls within one of four general categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Cr.App.1973); *Bell v. State*, 724 S.W.2d 780, 802–803 (Tex.Cr. App.1986) cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Error exists when facts not supported by the record are interjected; however, such error is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex.Cr.App. 1988) and cases cited therein. In this case the trial court did sustain the objection, and promptly instructed the jury to disregard the statement of the prosecutor regarding the mental status of a victim. This was sufficient to cure the error. *Pyles v. State*, 755 S.W.2d 98, 118 (Tex.Cr.App.) cert. denied, —— U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). Appellant's point of error number ten is overruled.

In point of error number eleven, appellant complains that the trial court erred in not granting his motion for mistrial based on appellant's display before the jury panel in jail restraints. Appellant claimed that people in the front row of the jury panel "could have seen those chains and anybody that walked in and out of the courtroom could see them if they looked at it."

In *Marquez v. State*, 725 S.W.2d 217, 227–28 (Tex.Cr.App.) cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987), we reiterated the proper standard of review for questions involving the propriety of shackling defendants during trial.[5] The *Marquez* Court, citing *Thompson v. State*, 514 S.W.2d 275, 277–78 (Tex.Cr.App.1974), held:

"It is within the discretion of the trial judge to require uniforms and handcuffs for a defendant.... The test on appeal is whether the trial court abused its discretion in requiring the witnesses to appear in jail uniforms and in handcuffs. To enable this Court to review the trial court's action on appeal, the record should contain factual matters on which the trial court's discretion was based. It must appear in the record that in exercise of its discretion the trial court had a fair knowledge and understanding of all such factual matters ...

"In a case where a defendant was tried in handcuffs, this Court wrote that if for security reasons handcuffs were necessary the trial judge should have the record clearly reflect the reasons therefor. That record must affirmatively reflect those reasons, not in general terms but with particularity." *Marquez*, 725 S.W.2d at 227–28. (citations omitted).

The trial court heard evidence from the appellant and State on the question of whether the appellant was prejudiced when potential jurors saw leg restraints on the appellant. The trial court made the following findings of fact:

(1) On April 10th, appellant apparently had one leg crossed in such a manner to expose the restraint to some members of the jury.

(2) Testimony revealed that at least a few jurors could see through a little doorway or aperture in the spectator rail allowing for exposure of the constraint.

(3) Before individual voir dire, steps were taken to insure that no juror saw appellant's restraints.

(4) No jurors indicated during voir dire they had seen the restraint.

(5) Appellant had a history of escapes, alleged escapes and an expressed wish to die rather than be incarcerated justifying the use of restraints.

We find that the trial court did not abuse its discretion in ordering the use of restraints. The record is clear and well developed on this point. In addition, we hold that appellant did not suffer any prejudice as a result of potential jurors possibly seeing him restrained. See *Clark v. State*, 717 S.W.2d 910, 918 (Tex.Cr.App.1986). Appellant's eleventh point of error is overruled.

In point of error number twelve appellant argues that his right to a fundamentally fair trial as guaranteed by the Sixth Amendment was denied when his motion to disqualify the district attorney was denied. Prior to trial, appellant moved to have the district attorney disqualified on the grounds that he might be a material witness. Although the district attorney did testify at the pretrial hearing on the motion to suppress appellant's confession, he was never called to testify during trial. Appellant does not direct us to any alleged harm that he suffered as a result of the trial court's ruling, and we perceive none. Appellant's point of error is without merit and is overruled.

The judgment is affirmed.

CLINTON, J., concurs in the result.

---

**5.** Appellant's point of error encompasses two questions. Whether restraints were justified and whether appellant was prejudiced when potential jurors could have seen the restraints on appellant.