Leon v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00214-CR







Jose Gil Leon, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 94-732-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







 A jury found appellant guilty of two counts of aggravated sexual assault of a child
and sentenced him to two terms of life imprisonment. Tex. Penal Code Ann. § 22.021 (West
1994). (1) Appellant raises two points of error complaining of improper jury argument. We will
affirm the judgment of conviction.



BACKGROUND


 Appellant was indicted on three counts of aggravated sexual assault of a child. 
Count one was later abandoned by the State, and appellant pleaded guilty before a jury to counts
two and three of the indictment. Thus, the jury's duty was to find appellant guilty and assess
punishment. Counts two and three alleged that appellant caused the sexual organ of appellant's
eleven-year old daughter, a child younger than fourteen years of age, to contact his sexual organ. 
At trial, the complainant testified that her father sexually molested her "lots of times." 
Specifically, the child stated that appellant put his sexual organ on her sexual organ, touched her
sexual organ with his hand, ejaculated on her vaginal area, put his mouth and tongue on her sexual
organ, kissed her on the mouth using his tongue, touched her breasts, and had her put her hand
on his sexual organ. The State elicited similar testimony from appellant's other daughter and a
third girl, both age seven. The complainant testified that her father had touched her sexual organ
with his hand, got on top of her, and kissed her vaginal area. The third girl stated that during the
period appellant lived with her family, appellant touched her vaginal area with his hands and
mouth.

 Appellant corroborated the children's testimony. In his signed confession,
appellant admitted to touching both his daughters with his hands and penis and to putting his penis
on the complainant's vagina until he ejaculated. At trial, appellant testified he sexually assaulted
all three girls. Appellant defined his understanding of the term "sexual assault" to be "to grab the
person or take the person and force them to do sex."

 During final argument, appellant's counsel argued the sexual abuse of the children
could have been worse if appellant had committed the "whole sex act." Counsel argued:



Your job is to assess this case, assess this client of mine, and decide what is right
in this case, and this case could have been worse. He could have raped these
children by the legal definition that we never heard. He could have committed the
whole sex act with them on a number of occasions . . . .



 In its final closing argument, the State asked the jury to consider the future
repercussions of appellant's actions on the children:



Let's talk about what [the three girls] are going to be deprived of. Do you think
that there's not a day that's going to go by in their life that they think "Why me,"
that they think "What was it about me that made him do these things to me"? Do
you think that some of those days they're going to think "Was it my fault"? Do
you think -- can you imagine what they're going to think when they reach puberty
and when they hold their boyfriend's hand for the first time and have these
feelings? Who do you think they're going to think of, this child molester, when
they think they've lost their virginity at age six? What an awful thought . . . .



At this point, appellant objected to the argument claiming there was no evidence to support the
claims that any of the girls lost their virginity at age six. The court sustained appellant's objection
on the ground that the expression "losing virginity" is a term undefined in the law and asked the
prosecutor to rephrase the statement. The prosecutor rephrased and clarified the remark with the
following statement:



You tell me if having a penis rubbing against a sexual organ to the point that the
man ejaculates on a child is not sexual intercourse to the point that the child knows
it's wrong and they are not the virgin that they should be at their age. I think
that's losing their virginity, and I hope you think the same thing.



Appellant made no further objections, and the State concluded its argument. As instructed, the
jury returned a guilty verdict on two counts of aggravated sexual assault of a child and assessed
appellant's punishment at life imprisonment on each count.


DISCUSSION


 On appeal, appellant urges this court to remand his cause for a new trial on
punishment. Appellant argues that he was denied both his state and federal constitutional
guarantees to due course and due process of law because the prosecutor made incurably improper
remarks during closing argument. U.S. Const. amend. XIV; Tex. Const. art. I, § 19. 
Specifically, he claims the prosecutor's comments regarding the girls' loss of virginity were so
inflammatory that their prejudicial effect on the jury could not reasonably have been removed by
any admonishment from the trial court.

 Generally, in order to preserve error for appellate review, a party must make a
timely objection, stating the specific ground for the ruling sought, and obtain a ruling on the
record from the trial court. See Tex. R. App. P. 52(a). To properly preserve error on improper
jury argument, it is generally necessary for the complaining party to (1) make an objection, (2)
request an instruction to disregard, and (3) move for mistrial. Cook v. State, 858 S.W.2d 467,
473 (Tex. Crim. App. 1993). In the instant cause, the record shows that appellant did make an
objection that was granted. However, no request to disregard or motion for mistrial was made. 
Thus, appellant did not properly preserve error. Indeed, appellant received all of the relief he
requested. Generally, an instruction to disregard will cure any error derived from improper jury
argument. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Moreover, when the
prosecutor restated and repeated the argument, appellant lodged no further objection.

 Even assuming that appellant had preserved error, we would decline to reverse the
conviction. The permissible scope of jury argument consists of (1) a summation of the evidence,
(2) any reasonable deduction from the evidence, (3) a response to argument of opposing counsel,
or (4) a plea for law enforcement. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). 
Even if jury argument falls outside the permissible scope, in order to constitute reversible error,
the jury argument must be extreme or manifestly improper, violate a mandatory statute, or inject
new facts in evidence harmful to the accused. Jacobs v. State, 787 S.W.2d 397, 406 (Tex. Crim.
App.), cert. denied, 498 U.S. 882 (1990). Moreover, an appellate court need not reverse a trial
court judgment when, beyond a reasonable doubt, the error made no contribution to the
conviction. See Tex. R. App. P. 81(b)(2); Orona v. State, 791 S.W.2d 125, 130 (Tex. Crim.
App. 1990).

 In the instant cause, appellant's closing argument suggested that the sexual abuse
inflicted upon the victims could have been much worse if appellant had forced them to engage in
sexual intercourse. The State responded by suggesting the extent of the damage actually suffered
by the victims and the probable impact appellant's sexual abuse would have on their future
development. Appellant argued for mitigation of damages by emphasizing what did not happen
to the girls; the prosecutor responded by summarizing the seriousness of what did. We see
nothing improper about the prosecutor's response to opposing counsel's argument.

 Even assuming that the State's initially undefined use of the term "losing their
virginity" was ambiguous, the prosecutor's subsequent qualification of the phrase was sufficient
to encompass the evidence presented during the trial regarding appellant's misconduct. Given the
record, we find the prosecutor's qualified reference to the victims' loss of virginity was a
permissible response to appellant's suggestion that the case could have been worse had sexual
intercourse occurred. Furthermore, the State's proffered definition of the term was merely a
summation of the evidence presented at trial. Thus, we believe the State's closing argument was
within the realm of permissible jury argument.

 Even if the prosecutor's comment was neither a proper response to the argument
of appellant's counsel nor a summation of the evidence, we do not believe the comment was
extreme or manifestly improper, or that it injected new facts into the evidence that were harmful
to the accused. The State made it clear that by its reference to the girls' "loss of virginity" it was
not, as appellant argues, implying that appellant engaged in sexual intercourse with the girls. 
Likewise, we do not feel the jury was misled into believing this was the prosecutor's intention. 
Most notably, the trial court interrupted the State's argument upon its first mention of the girls'
loss of virginity and directed the State to clarify its use of the phrase. The State responded by
describing in detail from the evidence the conduct to which it was referring when it used the term
"losing their virginity."

 Moreover, the acts of sexual misconduct encompassed by the State's definition of
the phrase were well-supported by the evidence. We do not believe the State's use of the phrase,
as qualified, injected any new facts into the case. Appellant admitted the acts described by the
prosecutor, both during the trial and in his confession; it was not new evidence. Therefore, we
overrule both of appellant's points of error.




CONCLUSION


 Having overruled both of appellant's points of error, we affirm the trial court's
judgment of conviction.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: March 6, 1996

Do Not Publish 

 
1. [1]  This offense took place before September 1, 1994 and is governed by the law in effect at
the time the offense occurred. Because the current code amendments effective September 1,
1994 have no substantive effect on this offense, we cite the current code for convenience.



he
requested. Generally, an instruction to disregard will cure any error derived from improper jury
argument. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Moreover, when the
prosecutor restated and repeated the argument, appellant lodged no further objection.

 Even assuming that appellant had preserved error, we would decline to reverse the
conviction. The permissible scope of jury argument consists of (1) a summation of the evidence,
(2) any reasonable deduction from the evidence, (3) a response to argument of opposing counsel,
or (4) a plea for law enforcement. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). 
Even if jury argument falls outside the permissible scope, in order to constitute reversible error,
the jury argument must be extreme or manifestly improper, violate a mandatory statute, or inject
new facts in evidence harmful to the accused. Jacobs v. State, 787 S.W.2d 397, 406 (Tex. Crim.
App.), cert. denied, 498 U.S. 882 (1990). Moreover, an appellate court need not reverse a trial
court judgment when, beyond a reasonable doubt, the error made no contribution to the
conviction. See Tex. R. App. P. 81(b)(2); Orona v. State, 791 S.W.2d 125, 130 (Tex. Crim.
App. 1990).

 In the instant cause, appellant's closing argument suggested that the sexual abuse
inflicted upon the victims could have been much worse if appellant had forced them to engage in
sexual intercourse. The State responded by suggesting the extent of the damage actually suffered
by the victims and the probable impact appellant's sexual abuse would have on their future
development. Appellant argued for mitigation of damages by emphasizing what did not happen
to the girls; the prosecutor responded by summarizing the seriousness of what did. We see
nothing improper about the prosecutor's response to opposing counsel's argument.

 Even assuming that the State's initially undefined use of the term "losing thei