NUMBER 13-99-818-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 ___________________________________________________________________ 



WILLIAM OWENS , Appellant, 



v.

 
THE STATE OF TEXAS , Appellee. 

___________________________________________________________________ 


On appeal from the 214th District Court

of Nueces County, Texas.

___________________________________________________________________ 



O P I N I O N


Before Chief Justice Valdez and Justices Hinojosa and Hill(1)

Opinion by Justice Hill



 William Owens appeals his conviction by a jury of the offense of indecency with a child by touching the genitals of that
child. The trial court assessed his punishment at four years in the Texas Department of Criminal Justice, Institutional
Division. Owens contends in two issues that the trial court erred in overruling his motion to suppress the statement he gave
to the police and that the evidence is both legally and factually insufficient to support his conviction. 

 We affirm because the evidence is legally and factually sufficient to support his conviction and because the trial court did
not abuse its discretion in overruling Owens's motion to suppress his statement since the record supports the trial court's
decision that his statement was voluntary. 

 Owens contends in issue two that the evidence is both legally and factually insufficient to support his conviction. In
evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. See
Ovalle v. State, 13 S.W.3d 774, 777 (Tex. Crim. App. 2000). 

 The complainant was four years old at the time of the occurrence in question. The complainant's mother testified that one
evening the complainant told her cousin, who was visiting, that William "played sex" with her. She said it caught her
attention. When she looked at the complainant, the complainant was standing on the bed rocking her hips, dancing
differently than she had in the past. She recounted that the complainant told her that William messed with her, that he
"played horsy" with her, that he made her vaginal area slippery and wet, that he licked it, and that "he put his thing in
there." She said that when her daughter was talking about William putting "his thing" in there, she was talking about his
penis because she had said the word "dick." She indicated that she concluded that her daughter was talking about her
vaginal area as the place he put it, because that is where her daughter was pointing. She identified Owens as the "William"
that her daughter was talking about when she told her what had happened. 

 The complainant, who was age four at the time in question, and age five at the time of trial, testified that she remembered
telling her mother that William played horsy with her. She said that is why she does not like him, and that he did nothing
else. She would not say whether she remembered telling her mother and the nurse that he played sex with her, what she
meant by that, and she would not show how he played sex with her. She indicated that she remembered telling her mother
that he licked her "down there," but then said that he did not do that. She also stated that she was afraid of William because
he did bad stuff. 

 Joan Felton testified that she is a sexual assault nurse examiner and a registered nurse. She indicated that the complainant
told her that "William put his dick in my brain," and that "William touched me down - touch me at mama's home. He was
laying on the bed. He had his pants down and his boxers down and he was playing horsy on me, and he played sex on me.
He put his finger and dick in my cat." Felton said that the child then pointed at her female sexual organ. Felton indicated
that when she conducted a genital exam of the complainant, she noticed a circular half-centimeter of redness on the majora,
the further outer lips of the vagina. 

 The State presented a videotape of an interview with Christopher Florence, a specialist with Child Protective Services. In
that interview, when she was asked what part of the body she goes pee pee from, the complainant replied, "It's what will be
the cat." Florence then asked her, "A cat? Is that what you call it, a cat?" The complainant replied, "Yeah." The
complainant then told Florence that William had done something to her that scared her. She said, "He tried to playing hors
-- I -- He's played sex on me. He played sex up to my brain. And he took it out, and he put it inside his head and he gave
me his brain." She indicated that this happened "last night or earlier," at her mother's house. She said that it happened
while her mother was at the store, while she and William were there alone. She told Florence that William touched her on
her naked bottom, after making her pull down "my little pants" and my "little underwears." She indicated that he touched
her on her "cat" with his hand. She said that William pulled down his "little boxers." Subsequently, she told Florence that
William touched her cat with his "little dick," which was outside his pants. She said his "dick" was hard and red. 

 In a statement given to police, Owens said that he was suspected of touching the complainant's vagina, that he was sorry it
happened, and that he would never do it again. He indicated that while the complainant's mother was gone from the house,
he was unable to control his urge to touch the complainant's vagina. He said it was the only time he had ever touched it and
that all he did was touch the outside of the vagina. He denied putting his finger inside the complainant's vagina. We hold
that the evidence is legally sufficient to support Owens's conviction. 

 In evaluating the factual sufficiency of the evidence, we view all the evidence in the light most favorable to the prosecution
and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Applying this standard, we hold that the evidence is
factually sufficient to support Owens's conviction because the verdict is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. We overrule Owens's contentions as presented in issue two. 

 Owens urges in issue one that the trial court erred in overruling his motion to suppress the statement that he gave to the
police on the basis that it was involuntary. At a suppression hearing, the trial court is the sole judge of the credibility of
witnesses and the weight of their testimony. Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). We are not to disturb
the trial court's findings if those findings are supported by the record. Id. We only consider whether the trial court properly
applied the law to the facts. Id. 

 The statement of an accused may be used in evidence against him if it appears that it was freely and voluntarily made
without compulsion or persuasion. See Id.; Tex. Code Crim. Proc. Ann., art. 38.21 (Vernon 1979). The determination of
whether a confession is voluntary is based upon an examination of the totality of circumstances surrounding its
acquisition.Wyatt, 23 S.W.3d at 23. A statement is "involuntary," for the purposes of federal due process, only if there was
official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice by its maker. Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). 

 F. Michael Hess, a detective with the Family Violence Unit of the Corpus Christi Police Department, testified at the
suppression hearing that he made an appointment with Owens at the police station to talk to him about allegations
regarding the aggravated sexual assault of the complainant. He indicated that Owens came in on his own, appearing late
for the appointment. He said that he took Owens to a room in the back of the office of the Criminal Investigation Division.
According to Hess, he read Owens his Miranda warnings, had Owens read the warnings, and had him sign them. He
related that Owens was not under arrest. Hess testified that Owens circled the word "yes" to indicate that he understood his
rights, initialed it, signed it, and put the date and time. 

 Hess testified that he went through the warnings with Owens again before he signed his confession. He said that Owens
initialed each part of the warning. He indicated that Owens never asked him if he could talk to a lawyer or said that he
wanted to leave, nor did he ever say he did not want to talk or that he wanted to stop the interview. Hess related that he
never promised Owen anything or threatened him. According to his testimony, he read the confession line by line after
Owens indicated that he was having difficulty reading it. He said that after Owens said he understood the confession, they
both signed it. Hess testified that Owens was free to go during the interview. 

 Hess indicated that he used an illustration that if a parent catches his or her child with a cookie and the child denies eating
the cookie, the parent is more angry at the child for lying. He then indicated to Owens that because he had been caught, and
the complainant was saying that he touched her, it made sense for Owens not to say it did not happen. Hess denied getting
in Owens's face, raising his voice at him, or intimidating him. 

 Owens testified that he understood that by signing the warnings he was giving them up, so that he never attempted to
invoke any of them. He said he assumed when he went in for the interview that he was under arrest. He indicated that he
was very nervous or terrified. He insisted that there were no breaks during the interrogation. He stated that he was
promised that he could go home if he signed the statement. Owens also insisted that Hess told him that if he signed the
statement things would be easier for him, and that it was most likely that he would get probation. 

 On cross-examination, Owens acknowledged that his feeling that he was not free to leave was basically due to his being
nervous and stressed out. While Owens denied being warned of his right to talk to a lawyer, he admitted that the initials
next to that portion of the warning were his. He also admitted that he never asked to leave. We hold that the trial court did
not abuse its discretion by overruling Owens's motion to suppress, because the record supports the trial court's decision. 

 Relying on Jacobs v. State, 787 S.W.2d 397 (Tex. Crim. App. 1990), Owens urges that his statement was inadmissible
because of Hess's indication that it would be easier on him if he made it. Owens contends that Hess freely admitted that he
told Owens that it would be easier on him if he were to give a statement. Hess did acknowledge that "in a sense" he may
have been indicating to Owens that it would be easier if he made a statement by giving him the illustration about the child
taking cookies from a cookie jar. When his testimony is placed in context, he did not acknowledge telling Owens that it
would be easier on him or promising him that if he made the statement that it would be easier on him. 

 An inculpatory statement obtained as a result of a benefit positively promised to the defendant made or sanctioned by one
in authority and of such a character as would be likely to influence a defendant to speak untruthfully is not admissible.
Jacobs, 787 S.W.2d at 399; Hardesty v. State, 667 S.W.2d 130, 134 (Tex. Crim. App. 1984). In this case, based upon the
record, the trial court could reasonably have determined that Hess hinted at the possibility of leniency, but did not
positively promise it. 

 Owens also urges that his statement was inadmissible because Hess told him that the case had already been presented to
the district attorney's office, implying that Owens's options were limited, and because Hess generally intimidated him into
making the statement. The trial court could reasonably have determined from the record that Hess did not intimidate
Owens into making his statement and could reasonably have determined that the mere fact that Owens knew that a case had
already been presented to the district attorney's office did not render his statement involuntary. We overrule Owens's
contentions as contained in issue one. 

 The judgment is affirmed. 



______________________________ 

JOHN HILL, 

Retired Justice 



Do not publish . 

Tex. R. App. P. 47.3(b). 



Opinion delivered and filed 

this 15th day of February, 2001. 

1. Retired Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.
Gov't Code Ann. § 74.003 (Vernon 1998).