02-11-488-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00488-CR

 

 









 
 
 Ronnie
 Jraun Otems, Jr.
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 89th District Court
  
 of
 Wichita County (51,235-C)
  
 December
 6, 2012
  
 Per
 Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

PER
CURIAM

 

 








 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00488-CR

 

 


 
 
 Ronnie Jraun Otems, Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 89th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.    
Introduction

In
three points, Appellant Ronnie Jraun Otems, Jr. appeals his four convictions, complaining
of the trial court’s actions before and during his trial.  We affirm.

II.  
Factual and Procedural Background

In
his appellate brief, Otems sets out the following background:

The facts surrounding Appellant’s charges here are the
stuff of a Hollywood action film and are largely uncontroverted at trial.  On
September 23, 2009[,] Mr. Otems was being held in the Wichita County jail
awaiting trial on an unrelated charge.  He was placed in a single cell at the
annex facility, a former warehouse retrofitted to serve as a jail.  After a
series of altercations with staff which he described as abuse, Mr. Otems used
his impressive strength to pry loose a metal table bolted to the cinderblock
wall.  He then used the table as a tool to beat on and pry back a steel plate
covering the internals of the cell’s shower.  Removing the plate exposed a
small hole allowing access to a pipe chase behind the cell.  Two pieces of
rebar blocked Mr. Otem[s]’s egress through the hole, but he was able to bend
them out of place enough to allow access to the pipe chase.  Appellant entered
the pipe chase and re-entered his cell multiple times, one time standing in the
dark directly next to a detention officer investigating noise in the pipe
chase.  Back in his cell, Mr. Otems removed several long screws that held the
shower plate to the wall and sharpened them to a point.  He bound the screws to
his hands with strips of his bed sheet and exited a final time into the pipe
chase.  He climbed the pipes and was able to position himself on top of the
cells, with room to walk below the tall ceilings of the jail.  He disabled a
security camera and climbed hand over hand across a hallway on an electrical conduit
and headed for the area he believed controlled the electrical power for the
facility.  Mr. Otems had previously tripped the breakers in his cell by jamming
a paperclip in the electrical socket and watched which direction the guard went
to fix the problem.  When Mr. Otems arrived at an electrical box he began to
flip switches and tear out wires causing the lights to go out and the electric
doors to lock.

According
to the record, Otems then attacked Officer Samuel Hankins, stabbing him four
times.  When Officer Michael Bonnin went to help, Otems charged at him and
punched him in the face three times.  During this struggle, Otems also lunged
at Officer Dustin Lowery and swung at him several times.  At trial, Officer
Bonnin testified that he did not feel any pain when Otems struck him, and based
on this testimony, Otems moved for a directed verdict on the
aggravated-assault-on-a-public-servant charge pertaining to Officer Bonnin,
designated as Count II in the indictment.  The trial court denied the motion.

After
a pretrial hearing on shackling, Otems was shackled, handcuffed, and attached
to a large metal plate on the floor throughout the trial.  However, all of this
was obscured from the jury’s view by a black curtain.  And after Otems
complained about having supervised visits with his attorney, he was allowed private
meetings in the courtroom with his attorney during breaks.

The
jury found Otems guilty in Count I for aggravated assault on a public servant
(Officer Hankins), in Count II for the lesser included offense of attempted
aggravated assault on a public servant (Officer Bonnin), in Count IV for possession
of a deadly weapon in a penal institution, and in Count V for escape.  The jury
found Otems not guilty in Count III, attempted aggravated assault on a public
servant (Officer Lowery).  The jury assessed the following years of confinement
as Otems’s punishment: seventy-five for Count I, sixty for Count II, thirty-five
for Count IV, and thirty-five for Count V, and the trial court entered judgment
on the verdict, ordering the sentences to run concurrently with each other but
consecutive to the sentence for which Otems was in prison at the time he
committed these offenses.  This appeal followed.

III. 
 Restraints

In
his first point, Otems complains that the trial court abused its discretion by
allowing him to be shackled during trial.  See Jacobs v. State, 787
S.W.2d 397, 407 (Tex. Crim. App.) (stating standard of review), cert. denied,
498 U.S. 882 (1990); see also Long v. State, 823 S.W.2d 259, 282
(Tex. Crim. App. 1991), cert. denied, 505 U.S. 1224 (1992).

As a
general rule, a jury should not be allowed to see a defendant in shackles during
the guilt-innocence phase of trial because it affects the defendant’s
presumption of innocence.  See Marquez v. State, 725 S.W.2d 217,
227 (Tex. Crim. App.), cert. denied, 484 U.S. 872 (1987), overruled
on other grounds by Moody v. State, 827 S.W.2d 875, 892 & n.7 (Tex.
Crim. App. 1992).  Only in rare circumstances is shackling called for, and the trial
court must set forth with specificity the reasons for it in the record.  Long,
823 S.W.2d at 282; see also Davis v. State, 195 S.W.3d 311,
315–16 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (stating that there must
be a showing of manifest need or exceptional circumstances, such as when a
defendant poses a threat to himself or others, assessed on a case-by-case
basis).

In Long,
the court of criminal appeals stated the following with regard to the lack of
specific findings of fact justifying the use of shackles:

In the present cause, the trial judge
did not make specific findings of fact justifying the use of shackles, but
rather stated in the record general concerns regarding security because
appellant was charged with capital murder.  Indeed, the facts of this case are
brutally violent, but there is no other evidence in the record of violence or
threatened violence by appellant during this trial.  The fact that a
person is charged with the most serious of felonies cannot override that
person’s constitutional presumption of innocence. Moreover, the trial judge
noted that appellant had been well-behaved during pre-trial proceedings.  While
the trial judge’s concern with security during trial is certainly admirable, we
find that these reasons are not sufficiently specific to support the judge’s
decision to have appellant shackled from the commencement of his trial.  Thus,
on the basis of this record, we hold the trial judge abused his discretion in
shackling appellant prior to trial.

823
S.W.2d at 283 (footnote omitted).  Despite concluding that the trial court
abused its discretion, however, the court held that the appellant was not
prejudiced or harmed because he had “fail[ed] to direct our attention to any
place in the record showing that the jury actually saw the shackles,” and the
trial court had taken measures to prevent the jury’s exposure to the shackles. 
Id.

As
in Long, the trial court here did not make findings regarding its
shackling decision.  See id.  In contrast to Long, however, in
addition to Otems’s instant charges, which were all subject to enhancement with
Otems’s prior convictions for aggravated robbery and assault on a public
servant, at the pretrial hearing on shackling, Deputy Chief Derek Meador of the
Wichita County Sheriff’s Office testified that while in jail, Otems had been
involved in several incidents requiring the use of force against him, had an
above-average number of disciplinary cases, had created weapons while in jail,
and, on multiple occasions, had said that he intended to stab an officer.  Deputy
Meador described Otems as unpredictable and said that he believed Otems would
potentially serve as a threat to himself or others during the course of the
trial.  Deputy Meador stated that on the night before the shackling hearing,
Otems had told officers that he did not understand why he had been placed in a
smock to prevent self harm “because he wasn’t suicidal, he was homicidal.”
 [Emphasis added.]

Starla
Jones, the assistant district attorney, testified that for at least one of
Otems’s pretrial hearings, Otems had been brought in strapped down to a metal
restraint chair, the only inmate that she could recall ever having been brought
in that way in the eleven years she had been a prosecutor.  And Royce Smithey,
the chief investigator for the State of Texas’s special prosecution unit,
testified that Otems had several cases pending against him for assaults on
prison guards, and that, based on Otems’s past actions and the special
precautions taken with Otems in the controlled environment of a jail, “I think
you put in a situation where [Otems] is not under the constant control of some
type of restraint, I think you’re asking for possible problems, major problems,
dangerous problems.”

Notwithstanding
that, even without the express fact findings, the foregoing showed a manifest
need to have Otems shackled during trial, it is also apparent from the record that
Otems was not harmed:  the trial court had a black curtain placed around the
table to prevent the jury from seeing Otems’s hands or feet.  See id.
at 282.  Otems directs us to no place in the record showing that the jury saw
him in restraints, and absent evidence that the jury actually saw the shackles,
we cannot conclude that he was harmed.  See id. at 283; see
also Canales v. State, 98 S.W.3d 690, 697–98 (Tex. Crim. App.) (“Nothing in
the record indicates that the jury ever saw or heard or was otherwise aware
that appellant was wearing shackles.”), cert. denied, 540 U.S. 1051
(2003).  Therefore, we overrule Otems’s first point.

IV.
 Communication

In
his second point, Otems complains that he was unable to communicate with his
attorney before and during trial, specifically with regard to the presence of
guards during his jail meetings with his attorney.  The following exchange
occurred between the court and counsel for Otems before trial:

[OTEMS’S COUNSEL:]   Yeah, I will just make a statement
to the Court real quick.  Judge, we’ve had some issues with communication with
Mr. Otems.  As Captain Johns noted, I’ve been available—I’ve been able to come
to the Court—oh, I’m sorry—come to the jail and visit with Mr. Otems at any
time.  They’ve been quite good with that.

However, while we’ve been in the jail there’s
been a requirement that two officers be in the hallway.  Sometimes they may be
next to me.  Sometimes they’ve been farther away and while I appreciate that
for, you know, for myself, you know, the—the nature of these charges are
assaults against members of the Sheriff’s Office, which makes it somewhat
difficult to discuss both the trial strategy and just—just free and open
communication with Mr. Otems at this time.

We are prepared to go forward, but I’m
not sure what—what possible information may have been stifled from Mr. Otems by
the Sixth Amendment violation to his right to an attorney during this time. 
Thank you.

[PROSECUTOR:]  Your Honor, I haven’t heard of this.  I
don’t know exactly, you know, what the situation is up there.  I can say that I
know myself—neither myself nor Mr. Young or Ms. Jones have had any
communication with any detention officers and we certainly have not received
any information.  So with regard to that, that’s—that’s all I know.

THE COURT:  What relief is sought?

[OTEMS’S COUNSEL]:  I haven’t really asked for relief
at this time other than the opportunity in the future to visit with Mr.
Otems privately and to lay the objection before the Court for the previous
incidents.

[Emphasis
added.]

Following
the foregoing exchange between the trial court and Otems’s counsel, further
discussion ensued:

[PROSECUTOR]:  Depending on what the Court wants in this
case, you know, [Otems’s attorneys], I mean, we have no objection if—if they
would want unsecured meetings with the Defendant either in the jury room or the
lawyer’s lounge.  I don’t know if the Sheriff’s Department has a problem with
that, I don’t know if the Court does, but we would have no objection to that or—or
meetings inside of a jail cell with—with no guards.

[OTEMS’S COUNSEL]:  Additionally, I think there may be an
issue with—that [Otems’s other counsel] spoke to you earlier about today being
able to confer with [Otems] going forward through the trial.  It doesn’t appear
that he’s able to move from the steel plate on the floor, so that may be
something to consider about how we want to handle that as well.

THE COURT:  Well, the steel plate on the floor is going
to remain.  Now, as far as conferring, we will try to afford you every
opportunity.  We will be taking breaks during the jury selection.  They have an
opportunity then and when nobody else will be in the courtroom, all right, subject
to I guess the—maybe the deputies being at the back, I don’t know, because I’m
not in the security business.  I’m just in charge of it, supposedly, under the
law.

But as far as the actual handling of
the Defendant, I’ve got to leave that to the discretion of the Sheriff and
balance it out with the constitutional rights, obviously of Mr. Otems.  So if
possible, and if—if it’s acceptable with the Sheriff’s Office, then we could
have them stand at the back of the courtroom or perhaps you and your—well, that’s
not going to work because you can’t move the plate—to ask everybody else to
leave and you would have an opportunity to confer.

[OTEMS’S COUNSEL]:  Thank you, Your Honor.  I appreciate
that.

THE COURT:  And during the course of the trial, we will
be taking breaks and we’ll see to it that everybody leaves the courtroom and
you’ll have the opportunity to confer then.  It’s not the Court’s intentions to
prevent any conferring.  It’s just what we’re going to have to tolerate to get
there, okay?

[OTEMS’S COUNSEL]:  Thank you, Judge.

To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State, 319
S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must have
ruled on the request, objection, or motion, either expressly or implicitly, or
the complaining party must have objected to the trial court’s refusal to rule. 
Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).  A reviewing court should not address the merits of an issue
that has not been preserved for appeal.  Wilson v. State, 311 S.W.3d
452, 473 (Tex. Crim. App. 2010) (op. on reh’g).

Assuming
the discussions above can be construed as an objection by Otems’s counsel, though
apparently for which no relief was sought, Otems’s counsel indicated at the
conclusion of the discussions that he was satisfied with the State’s proposals
and the trial court’s decision; he made no further objection.  Under these
circumstances, because no further error, if any, was preserved for our review, we
overrule Otems’s second point.

V.  
Directed Verdict

In
his third point, Otems complains that the trial court erred by overruling his
motion for directed verdict on Count II, aggravated assault on a public
servant, because the State failed to prove a bodily injury.  However, though
the trial court denied Otems’s request, the jury found Otems not guilty of this
count anyway before finding him guilty of the lesser included offense, which
did not require bodily injury, rendering this point moot.  See Tex. Code
Crim. Proc. Ann. art. 37.08 (West 2006) (“In a prosecution for an offense with
lesser included offenses, the jury may find the defendant not guilty of the
greater offense, but guilty of any lesser included offense.”); see also
Douthit v. State, No. 06-02-00007-CR, 2003 WL 1922490, at *1 (Tex. App.—Texarkana
Apr. 24, 2003, no pet.) (not designated for publication).  We overrule Otems’s third
point.

VI.
 Conclusion

Having
overruled Otems’s three points, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

 

PANEL: 
MCCOY, WALKER,
and GABRIEL, JJ.

 

WALKER,
J., concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  December 6, 2012









[1]See Tex. R. App. P. 47.4.