

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00323-CR

CARL LONG,
                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

From the County Court at Law
Navarro County, Texas
Trial Court No. C-35353-CR

## MEMORANDUM  OPINION

Pursuant to a plea agreement, Appellant Carl Long pleaded guilty to the offense of possession or transport of certain chemicals with intent to manufacture a controlled substance, and the trial court assessed his punishment at sixteen years' imprisonment. This appeal ensued.  In two issues, Long contends that the trial court erred in denying his motions to suppress.

**Background**

Long filed two motions to suppress. At an evidentiary hearing on the motions, the Navarro County Sheriff's Department custodian of records testified that he had brought a CD of the 911 calls from November 14, 2013. The CD was admitted into evidence. One of the 911 calls was from a man who identified himself and his address and reported a suspicious vehicle driving near his house. He described the vehicle and provided the license plate number to the 911 operator.

Navarro County Sheriff's Department Sergeant Jeff Harbuck testified that, on November 14, 2013, dispatch notified him that a citizen had reported his concern about a suspicious car. The citizen had said that the car had pulled into an area and "killed the lights" and then had driven to another area where there were no residences. Harbuck responded and pulled over the car. Harbuck approached the car, talked to the driver, Long, and then performed a brief search of the car. Harbuck also determined through dispatch that Long had a burglary warrant from Arkansas but that Arkansas was not requesting that Long be extradited on the warrant. Harbuck let Long leave.

Harbuck testified that when he told dispatch about clearing the vehicle, dispatch told him that the 911 caller had reported two people being in the car. Harbuck confirmed with the 911 caller that he had seen two people in the car. Harbuck then told Navarro County Sheriff's Department Sergeant Rickey Ragan to stop the car and check the vehicle for a second person. Harbuck said that he believed that he told Ragan to stop the car and check the trunk to see if there was another person in the car and, if there was not another person in the car, to find out where that person was. When asked if it raised his

suspicions that Long told him that he had been all by himself and that that was contradicted by the 911 caller, Harbuck replied, "Yes." Harbuck also stated that there had been "thefts and stuff" in that area.

Ragan testified that at about 9:42 p.m. on November 14, 2013, he was dispatched after a call had been received about a suspicious vehicle. The caller reported that a vehicle had pulled down the road from his residence and turned off its lights. When asked why Ragan would respond to a call like that, he replied that they were receiving a lot of burglary calls at that time from that end of the county.

Ragan testified that Harbuck encountered the vehicle before he did. Ragan was able to hear the radio traffic between Harbuck and dispatch. Harbuck made contact with and identified the one person in the vehicle. Harbuck investigated and discovered that there was a burglary warrant for Long. Harbuck nevertheless let Long go. Harbuck and Ragan then learned, however, that the 911 caller had reported that there had been two people in the car.

Ragan testified that, through his field experience, he knew that it was common practice for burglars to drive into an area, for one person to exit the vehicle and conduct the crime, for the other person to pick him up, and for them to then leave the area. Ragan was therefore suspicious that Long was in the area waiting to pick up the second person, especially because Long had a burglary warrant. Ragan was also aware that there had been a rash of burglaries in that area and that it was the time of night that burglaries occur. The car had been seen on a country road that is not well traveled. The road is generally residential and usually traveled only by people who live there.

Ragan testified that he saw the vehicle leaving the area and decided to pull it over and determine whether it was occupied by one or two persons. Ragan stated that, to his knowledge, Harbuck had not searched the trunk to see if there was another person hiding in it or if the trunk held stolen items. Ragan did not pull Long over for a traffic violation. Although he recalled Harbuck instructing him to stop Long again, Harbuck's instruction was not a reason for the stop. Instead, Ragan stated that he believed that all the facts gave him reasonable suspicion to stop the vehicle again. A video of the stop was admitted into evidence.

Ragan testified that he made contact with Long, the only occupant of the vehicle. He asked Long to get out of the vehicle and then patted him down for weapons. Ragan asked Long if there was anything in his trunk and asked for consent to look into the trunk. Long walked back to the trunk and opened it for Ragan. As soon as Ragan approached the back of the vehicle and the open trunk, he smelled a "[s]trong chemical-type odor." Ragan stated that he has training and experience with narcotics and that he knew it was common for certain chemicals to be used in the manufacturing of narcotics. When Ragan opened the trash bags containing the items in the trunk, he found different types of chemicals, jars and containers (including a coffee container holding what was later determined to be crushed Sudafed pills), tubing, coffee filters, and lithium batteries. Ragan stated that based on his experience, he knew that those items, when kept together, are commonly used to manufacture narcotics, specifically methamphetamine.

Ragan testified that he secured Long in handcuffs and advised him of his *Miranda* rights. Long acknowledged that he understood each of his rights. Long did not

specifically state that he wanted to waive his rights. Instead, Long said that he would tell Ragan the truth if he would let him go home and go to bed. Ragan said, "Okay." Ragan asked Long what the items in his vehicle were. Long said nothing. Ragan asked Long if the items in his vehicle were used to make narcotics, and Long replied that they were. Ragan asked Long if the items were his but that he was going to give them away, and Long replied yes.

Long's counsel argued at the hearing that any evidence and statements should be suppressed because Long was stopped and detained without reasonable suspicion. Long's counsel specified that he was arguing that only Ragan's stop was improper, not Harbuck's stop. Long's counsel also argued that certain statements made to Long's detriment should be suppressed because Long was improperly induced into making the statements.[1] The trial court denied the motions and made findings of fact and conclusions of law.

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede*

---

[1] Long's counsel made several other arguments for why evidence and statements should be suppressed, but those arguments have not been raised in this appeal.

*v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

**Issue One**

In his first issue, Long contends that the trial court erred in denying his motions to suppress because the trial court erred in concluding that the officers had reasonable suspicion to stop and detain him.[2]

Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry*, 392 U.S. at 30). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop

---

[2] Long argues in the substance of this issue that the trial court erred in concluding that there was reasonable suspicion to stop and detain him, but Long asserts in the statement of the issue itself that the trial court erred in holding that the officer had "probable cause" to warrant the stop and detention. The trial court did not conclude that there was "probable cause" to stop and detain Long. The Court of Criminal Appeals has stated, "An officer must have *reasonable suspicion* that some crime was, or is about to be, committed before he may make a traffic stop." *State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013) (emphasis added). Accordingly, the trial court's second conclusion of law states, "Deputy Ragan had sufficiently articulated the facts that gave him *reasonable suspicion* to detain the Defendant." [Emphasis added.] We therefore overrule Long's first issue to the extent he contends that the trial court erred in holding that the officer had "probable cause" to stop and detain Long.

Additionally, Long does not specify in this issue whether he is challenging only Ragan's stop or both Harbuck's and Ragan's stops. In the trial court, however, Long specified that he was challenging only Ragan's stop, and the trial court accordingly made a conclusion of law regarding only Ragan's stop. Long has therefore preserved for review only his challenge of Ragan's stop. *See* TEX. R. APP. P. 33.1(a). We overrule Long's first issue to the extent he challenges Harbuck's stop.

exists. *Id.* at 492. Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *See Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

In this case, Long argues that the officers acted simply on a hunch, not reasonable suspicion, when they stopped and detained him because his behavior did not "rise to the threshold of suspicious behavior." To illustrate, Long discusses *Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011), and *Arguellez v. State*, 409 S.W.3d 657 (Tex. Crim. App. 2013).

In *Derichsweiler*, a couple reported that a strange man pulled up next to them while they were at a restaurant's drive-thru, stared and grinned at them for about thirty seconds, and then left. 348 S.W.3d at 909. After placing their order, the couple was asked to pull out of the drive-thru lane while their food was being prepared. *Id.* The couple then noticed that the same man was parked in front of them and that he was again staring and grinning at them. *Id.* The man circled the restaurant and pulled up next to the couple and continued to stare and grin at them. *Id.* The man then drove into the adjacent parking lot and engaged in similar conduct with other parked cars. *Id.* at 910. The couple reported the man's suspicious behavior to police, who arrested him for DWI. *Id.* The Court of Criminal Appeals held that "the totality of circumstances, including the appellant's strangely persistent, if admittedly non-criminal, behavior, gave rise to a reasonable suspicion that he was about to engage in criminal activity." *Id.* at 917.

By contrast, in *Arguellez*, a pool manager notified police when a man was observed taking photographs of patrons at a municipal swimming pool at a public park. 409

S.W.3d at 659-60. The subjects of the photographs included women and children who were wearing swimming attire. *Id.* at 659. The responding officer saw a vehicle fitting the description given in the dispatch call pulling away from the side of the pool. *Id.* at 659-60. The officer followed the car and received information from the police dispatcher, who still had the pool manager on the phone, that the patrol car was behind the correct vehicle. *Id.* at 660. The officer then made the traffic stop. *Id.* The Court of Criminal Appeals held that there was insufficient evidence to establish reasonable suspicion for the stop and detention. *Id.* at 664. The court stated, "The totality of circumstances, including the cumulative information known to the cooperating officers at the time of the stop, was that an unknown male in a described vehicle was taking photographs at a public pool." *Id.* The court then noted that taking photographs of people at public venues is "not unusual, suspicious, or criminal." *Id.*

Long asserts that the officers in this case merely knew of burglaries in the area and were informed of two people in a vehicle that, upon contact, turned out to be one person in a vehicle. Long argues that these facts do not support the possibility that he was or would be engaged in criminal activity. Long states that his driving around the rural roads of Navarro County, with or without a passenger, is not akin to "strange" behavior. Long also states that a passenger being present in a vehicle and then later not being present in the vehicle is not suspicious behavior.

We believe, however, that, based on the totality of the circumstances in this case, the officers had reasonable suspicion, supported by articulable facts and rational inferences from those facts, that Long was, had been, or soon would be engaged in

criminal activity.

In *Derichsweiler*, the Court of Criminal Appeals states that if circumstances that may seem innocent enough in isolation combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. 348 S.W.3d at 914.

> "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." A 911 police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. Finally, information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable. In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot.

*Id.* at 914-15 (footnotes and citations omitted).

At the time of the stop, Long appeared to have lied to Harbuck about being alone. Harbuck testified that Long told him that he had been all by himself but that Harbuck had confirmed with the known 911 caller that two people had been in the car. Long did therefore appear to have exhibited suspicious behavior.[3] Furthermore, the officers had learned that Long had an active arrest warrant for burglary. Ragan testified that there had been a rash of burglaries in the area and that it was the time of night that burglaries

---

[3] It is irrelevant whether Long actually lied to Harbuck. An officer's reasonable suspicion may be validly based on articulable facts that are ultimately shown to be inaccurate or false. *See Williams v. State*, 621 S.W.2d 613, 615 (Tex. Crim. App. [Panel Op.] 1981).

occur.  *See Crain v. State*, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010) (explaining that while time of day or night and crime rate of an area are not dispositive in and of themselves, they may be taken into account in determining whether reasonable suspicion exists to justify investigative stop).  He acknowledged that Long was driving on a road that is generally residential and usually traveled only by people who live there.  And Ragan testified that, through his field experience, he knew that it was common practice for burglars to drive into an area, for one person to exit the vehicle and conduct the crime, for the other person to pick him up, and for them to then leave the area.

Considering the totality of the circumstances and the cumulative information known to the cooperating officers at the time of the stop, we hold that the trial court did not err in concluding that the officers had reasonable suspicion for Ragan to stop and detain Long.  Accordingly, the trial court did not err in denying Long's motions to suppress based on this issue.  We overrule Long's first issue.

**Issue Two**

In his second issue, Long contends that the trial court erred in denying his motion to suppress statements because the trial court erred in concluding that the statements were made in compliance with Article 38.22 of the Code of Criminal Procedure and the Fifth Amendment.  More specifically, Long asserts that his statements were involuntary because, while he was being detained and even though he had been given *Miranda* warnings, Ragan promised him that he would let him go home and go to bed.

Under the Fifth Amendment, statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before

he made those statements. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see* U.S. CONST. amend. V. Article 38.22 of the Code of Criminal Procedure also requires the suppression of statements made during a custodial interrogation unless certain statutorily prescribed warnings are given. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (West Supp. 2015). The accused, however, may waive any rights set out in these warnings if done so knowingly, intelligently, and voluntarily. *Id.*; *Miranda*, 384 U.S. at 444-45, 86 S.Ct. at 1612. Similarly, Article 38.21 of the Code of Criminal Procedure requires a statement to have been "freely and voluntarily made without compulsion or persuasion" to be admissible as evidence. TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). When reviewing whether a statement is voluntary, we examine "the totality of the circumstances surrounding its acquisition." *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995).

A statement is involuntary if circumstances show that the confession was induced by a promise of a benefit. *Id.* at 748. But before a promise will render a confession inadmissible, the promise must be shown to have induced the confession because it was positive for the defendant, made or sanctioned by someone in authority, and of such an influential nature that the defendant might speak untruthfully in response. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). The truth or falsity of the statement is immaterial; the question is whether the promise would likely induce a false confession. *Id.* at 794-95.

In this case, Long was detained and given *Miranda* warnings. Long then told Ragan that he would tell him the truth if Ragan would let him go home and go to bed.

Ragan said, "Okay." Long argues that this response by Ragan was a promise that rendered his subsequent incriminating statements involuntary. Long, however, initiated the proposal; therefore, he "*cast himself in the role of entrepreneur* and as such has diminished ability to complain on appeal that he was 'influenced' or 'induced' to do anything." *See Jacobs v. State*, 787 S.W.2d 397, 400 (Tex. Crim. App. 1990); *see also Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997). Considering the totality of the circumstances, we conclude that Long's statements were not involuntary as being a result of improper inducement. Accordingly, the trial court did not err in denying Long's motion to suppress statements based on this issue. We overrule Long's second issue.

Having overruled both of Long's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 22, 2016
Do not publish
[CR25]

