ACCEPTED
03-16-00133-CR
13147483
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/10/2016 11:50:49 AM
JEFFREY D. KYLE
CLERK

**No. 03-16-00133-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/10/2016 11:52:00 AM
JEFFREY D. KYLE
Clerk

_____

On Appeal from the 264th Judicial District Court of
Bell County, Texas
Cause Number 74451

_____

**KEEVIN DASHAWN BYRD, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**ANDERS BRIEF IN SUPPORT OF
COUNSEL'S MOTION TO WITHDRAW**

_____

*Counsel for Appellant*
*Keevin Dashawn Byrd*

**KRISTEN JERNIGAN**
STATE BAR NUMBER 90001898
207 S. AUSTIN AVE.
GEORGETOWN, TEXAS 78626
(512) 904-0123
(512) 931-3650 (Fax)
kristen@txcrimapp.com

**ORAL ARGUMENT NOT REQUESTED**

## IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Keevin Dashawn Byrd

**Counsel for Appellant**:

Thomas Seigman (at trial)
2025 Memory Lane, Suite 400
Harker Heights, Texas 76548

Kristen Jernigan (on appeal)
207 S. Austin Ave.
Georgetown, Texas 78626

**Counsel for Appellee, The State of Texas:**

Henry Garza
Bell County District Attorney

Fred Burns
Suzanne Wohleb
Assistant District Attorneys
P.O. Box 540
Belton, Texas 76513

**Trial Court Judge:**

The Honorable Martha Trudo

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

PROFESSIONAL EVALUATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

NOTICE TO APPELLANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

CERTIFICATE OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

# INDEX OF AUTHORITIES

**CASES**

*Anders v. California*, 386 U.S. 738 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . .14

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . .17, 18

*Fairow v. State*, 943 S.W.2d 895 (Tex. Crim. App. 1997) . . . . . . . . . . . .14, 15, 16

*Gaines v. State*, 479 S.W.2d 678 (Tex. Crim. App. 1972) . . . . . . . . . . . . . . . . . .13

*Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . 17

*Hawkins v. State*, 112 S.W.3d 340 (Tex. App.–Corpus Christi 2003) . . . . . . . . . .10

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Jacobs v. State*, 787 S.W.2d 397 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . .17

*Jordan v. State* 495 S.W.2d 949 (Tex. Crim. App. 1973) . . . . . . . . . . . . . . . . . 13

*Lafleur v. State*, 106 S.W.3d 91 (Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . . .12

*Lum v. State*, 903 S.W.2d 365 (Tex. App. -- Texarkana 1995) . . . . . . . . . . . . . . 15

*McCoy v. Court of Appeals of Wisconsin, District I*, 486 U.S. 429 (1988) . 9, 10, 11

*McMillan v. State*, 754 S.W.2d 422 (Tex. App. -- Eastland 1988) . . . . . . . . . . . . 14

*Tucker v. State*, 990 S.W.2d 261 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . .15

*Wilson v. State*, 40 S.W.3d 192 (Tex. App. - Texarkana 2001) . . . . . . . . . . . . . .9, 10

**STATUTES AND RULES**

TEX. CODE CRIM. PRO. Art. 37.07 § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

TEX. PENAL CODE § 6.03(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. PENAL CODE § 12.33(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. PENAL CODE § 19.04(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TEX. R. APP. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. R. EVID. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15, 16

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, oral argument is not applicable in the present case.

**No. 03-16-00133-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the 264th Judicial District Court of
Bell County, Texas
Cause Number 74451

_____

**KEEVIN DASHAWN BYRD, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

***ANDERS* BRIEF IN SUPPORT OF
COUNSEL'S MOTION TO WITHDRAW**

_____


## STATEMENT OF THE CASE

On July 1, 2015, Appellant was indicted for the felony offense of manslaughter. (CR: 4). On February 3, 2016, a jury found Appellant guilty of manslaughter, as alleged in the indictment, and assessed punishment at eight years confinement in the Texas Department of Criminal Justice. (CR: 53). Appellant timely filed Notice of Appeal on February 4, 2016.[1] (CR: 47). This appeal

---

[1] Once appointed, the undersigned also filed Notice of Appeal on February 29, 2016. (CR: 64).

1

results.

## STATEMENT OF FACTS

At trial, Jennifer Lee told the jury that she is the mother of the victim in this case, Christopher Harvey. (RR6: 15). On February 21, 2015, Harvey called Lee to pick him up because his shift at work was over. (RR6: 18). Lee traveled down Highway 2410 in Harker Heights and observed an accident site. (RR6: 19). Lee passed the scene to pick Harvey up from his workplace, but when she arrived, he was not there. (RR6: 20). Lee was later notified that Harvey had been killed in the accident. (RR6: 21). On cross-examination, Lee agreed that where the accident occurred was very dark. (RR6: 22).

Chanise Epps stated that on the night of February 21, 2015, she traveled with her friend, Terrence Kidd, in her vehicle to an area in Harker Heights to get something to eat. (RR6: 24-25). Epps's vehicle headlights were on and she was traveling approximately thirty-five miles per hour. (RR6: 32). When they were driving down Knightsway, also known as Highway 2410, her vehicle was struck from behind by another vehicle and she lost control. (RR6: 25-26). Epps's car was "totaled" after veering off of the road and striking a tree. (RR6: 26, 28). She never saw a pedestrian walking on or near the roadway. (RR6: 33). On cross-examination, Epps related that there were no street lights in the area where

2

the accident occurred and it was very dark.   (RR6: 37).

Terrence Kidd told the jury that on February 21, 2015, he was traveling in Epps's vehicle when they were struck from behind.   (RR6: 45).   Epps lost control of the car after the vehicle was struck on the right rear side of the bumper.   (RR6: 46).   They veered off the road and ended up in a parking lot.   (RR6: 47).   Kidd never saw a pedestrian in the roadway.   (RR6: 46).

Dominic Cummings stated that on February 21, 2015, he was traveling in his vehicle with his wife and daughter when he encountered a blue Honda vehicle at a stoplight.   (RR6: 52-53).   When the light turned green, the Honda pulled in front of Cummings's vehicle and proceeded down Highway 2410.   (RR6: 54).   Cummings estimated that the Honda was traveling faster than his vehicle.   (RR6: 56).   Cummings then saw the Honda strike a Crown Victoria.   (RR6: 59).   Cummings thought he saw someone ejected from the Honda after it struck the Crown Victoria and flipped over.   (RR6: 61-62).   On cross-examination, Cummings stated that he never saw a pedestrian on or near the roadway.   (RR6: 70).   On re-direct, Cummings was allowed to testify that the Honda was driving in a dangerous, unsafe, reckless manner.   (RR6: 73).

Alisa Cummings told the jury that on February 21, 2015, she was traveling with her husband and her daughter in their vehicle when she observed a Honda

3

vehicle speed up and then slow down. (RR6: 78). The driver of the vehicle applied the brakes, tried to pass and almost hit a curb. (RR6: 78-79). Alisa was allowed to testify that the driver was driving "recklessly" and she hoped he was not drunk. (RR6: 79). Alisa watched the Honda speed up and told her husband "He's going to hit somebody." (RR6: 80). The Honda then struck a Crown Victoria on the right bumper which caused the vehicle to veer to the left. (RR6: 82). The Honda flipped and landed. (RR6: 84). Alisa saw a person fly through the air and later land in a parking lot. (RR6: 84-85). On cross-examination, Alisa denied meeting with the prosecutor before trial, but acknowledged that in her written statement to police, she stated that the Honda struck the Crown Victoria on the left side, not the right side as she testified at trial. (RR6: 91, 93). On re-direct examination, the prosecutor elicited the fact that he and Alisa had actually met at least twice before trial, including one time at the scene of the accident months after the accident had occurred. (RR6: 94-95).

Raphael Baumgartel, an officer with the Harker Heights Police Department, told the jury that on 10:04 p.m. on February 21, 2015, he was dispatched to an accident on West Knightsway. (RR7: 9-10). Baumgartel arrived at the accident scene at 10:07 p.m. and was advised that someone had been ejected from one of the vehicles and was laying in the roadway. (RR7: 10-11). Baumgartel

4

identified Appellant as the driver of the Honda and reported that loud music was coming from his vehicle. (RR7: 13-14). According to Baumgartel, Appellant admitted that he was the driver of the Honda, that the vehicle in front of him was moving too slow, and "it was his fault." (RR7: 15). Baumgartel did not smell alcohol or marijuana coming from Appellant or his vehicle. (RR7: 16-17). On cross-examination, Baumgartel stated that the road where the accident occurred was not well lit. (RR7: 25).

Clyde Hicks, an accident investigator with the Harker Heights Police Department stated to the jury that he was dispatched to the accident scene in this case on February 21, 2015 and arrived at 10:36 p.m. (RR7: 47). Hicks spoke with Appellant who acknowledged he was the driver of the Honda and was by himself at the time of the accident. (RR7: 51). Based on his investigation, Hicks opined that the left front of the Honda struck the Crown Victoria from behind. (RR7: 55). Hicks also opined that the right front of the Honda struck Harvey with enough force to knock him out of his shoes and to rip off the passenger side mirror. (RR7: 55, 68, 110). Hicks stated that the vehicle driven by Appellant was driven in a way that could, and did, cause death or serious bodily injury. (RR7: 113-14). On cross-examination, Hicks admitted that he did not obtain a warrant to arrest Appellant until more than two months after the accident

5

occurred in this case and when he arrested Appellant, it was for the offense of criminally negligent homicide. (RR7: 114-15, 138). Hicks admitted further that the conditions on the roadway the night of the accident were "[d]ark, not lighted," and Harvey was wearing a black shirt and dark blue jeans. (RR7: 124, 128). Finally, Hicks admitted that despite his testimony on direct examination, he could not state conclusively where Harvey was standing when he was impacted by Appellant's vehicle and that there was no paint transfer from Appellant's vehicle to Harvey's body. (RR7: 138, 146).

Dr. Jeffrey Barnard testified that he is the Chief Medical Examiner for Dallas County and performed the autopsy on Harvey's body. (RR7: 74). Dr. Barnard testified that Harvey died virtually instantly when his brain stem was severed. (RR7: 77-78). Dr. Barnard concluded that Harvey's cause of death was "accident." (RR7: 79).

Garland Keith Potvin, an officer with the Killeen Police Department, stated to the jury that on March 4, 2015, he downloaded data from a crash data event recorder taken from Appellant's vehicle pursuant to a court order. (RR7: 151). The data from the recorder indicated that four seconds before impact with Epps's vehicle, Appellant's vehicle was traveling ninety-seven miles per hour. (RR7: 159). Three seconds before impact, Appellant's vehicle was traveling ninety-nine

6

miles per hour. (RR7: 160). Two seconds before impact, Appellant's vehicle was traveling 101 miles per hour. (RR7: 160). One second before impact, Appellant's vehicle was traveling 103 miles per hour. (RR7: 160). The brakes on Appellant's vehicle were applied one-half second before the impact with Epps's vehicle. (RR7: 161). A second impact was recorded less than four seconds later. (RR7: 164). At the close of Potvin's testimony, the State and the Defense both rested and closed. (RR7: 185, 189).

The jury deliberated and found Appellant guilty of the offense of manslaughter. (RR7: 214). At the punishment phase of trial, Appellant stipulated that he was previously placed on deferred adjudication probation for the misdemeanor offense of possession of marijuana and that he previously admitted his guilt to a charge of possession of a controlled substance, but that charge was dismissed pursuant to a plea bargain agreement. (RR8: 18). The State then introduced a written statement made by Appellant on February 23, 2016, in which he alleged that he was driving the speed limit prior to the accident and Epps swerved around him and slammed on her brakes, which caused the accident in this case. (RR8: 23-24).

Dorothy Byrd testified that Appellant is her son and at the time of trial, was twenty-three years old. (RR8: 27). Appellant was four years old when his

father abandoned him, his mother, and his four siblings. (RR8: 28-29). Appellant and his family had to move into a one-bedroom apartment and did not have enough money to turn on the heat in the winter or the air conditioning in the summer. (RR8: 30-31). When Appellant started school, he would not engage with the other children so Byrd pulled Appellant out of school. (RR8: 33). She later sought treatment for Appellant who was diagnosed with severe depression and anxiety. (RR8: 34). Appellant moved to Pennsylvania when he was a teenager and obtained his high school diploma. (RR8: 36). While, there, he was shot in the abdomen while walking down the street. (RR8: 36-37). Appellant suffered long term effects from the shooting and was diagnosed with Post Traumatic Stress Disorder. (RR8: 38-39). Byrd related that Appellant has expressed remorse to her since the accident in this case. (RR8: 42).

Michael Lee told the jury that Harvey was his stepson and lived with him and his wife. (RR8: 50). Harvey had a daughter who he spent time with and was working full-time while obtaining his GED. (RR8: 50-51). Michael stated that Harvey's death had impacted his family and that he did not believe Harvey's mother would ever be able to overcome his death. (RR8: 52).

After deliberating, the jury assessed Appellant's punishment at eight years in prison. (RR8: 72). The Court also entered a deadly weapon finding pursuant to

8

the jury's verdict in the guilt or innocence phase of trial.    (RR8: 73).

## ISSUE PRESENTED

**Whether the Instant Appeal Is Frivolous and Without Merit, Such That the Undersigned Should Withdraw as Counsel.**

A criminal defense attorney's duty is to zealously represent the interests of his or her client on appeal.    *Anders v. California*, 386 U.S. 738, 744 (1967).    If the appointed attorney finds the "case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."    *Anders*, 386 U.S. at 744.

Both retained and appointed appellate attorneys have a "duty to withdraw" as counsel when they conclude that an appeal would be frivolous, but appointed counsel "is presented with a dilemma because withdrawal is not possible without leave of court, and advising the court of counsel's opinion that the appeal is frivolous would appear to conflict with the advocate's duty to the client."    *McCoy v. Court of Appeals of Wisconsin, District I*, 486 U.S. 429, 437 (1988).    "It is well settled, however, that this dilemma must be resolved by informing the court of counsel's conclusion."    *Id.*    "Under *Anders* and its progeny, if an appointed attorney concludes that his client's appeal is without merit, he or she must (1) so inform the court, (2) seek permission to withdraw, and (3) file a brief 'referring to anything in the record that might arguably support the appeal.'"    *Wilson v. State*,

9

40 S.W.3d 192, 196 (Tex. App. - Texarkana 2001).

As the Supreme Court explained, the attorney's motion to withdraw must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders*, 386 U.S. at 744. A copy of counsel's brief should be provided to the Appellant and time should be allowed for him to raise any points that he chooses. *Id.* Then, the Court, and not counsel, decides, after a full examination of all the proceedings, whether the case is wholly frivolous. *Id.* If it so finds, it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. *Anders*, 386 U.S. at 744. In Texas, an *Anders* brief need not specifically advance "arguable" points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities. *See Hawkins v. State*, 112 S.W.3d 340, 343-344 (Tex. App.–Corpus Christi 2003). The attorney's duty to withdraw is based upon his or her professional and ethical responsibilities as an officer of the court not to burden the judicial system with false claims, frivolous pleadings, or burdensome time demands. *McCoy*, 486 U.S. at 436. The Supreme Court instructs: "Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing

10

party by advancing frivolous arguments.   An attorney, whether appointed or paid, is therefore under an ethical obligation to refuse to prosecute a frivolous appeal." *Id.*

## PROFESSONAL EVALUATION

Counsel would respectfully show the Court of Appeals that the instant appeal is frivolous and without merit, for the reasons outlined below.   Further, the trial court had jurisdiction over the present felony case and venue was proper in Bell County, where the offense was alleged to have occurred.   Appellant was convicted of the offense of manslaughter.   *See* TEX. PENAL CODE § 19.04(a). Appellant was sentenced to eight years in prison. The punishment range for that offense is that of a second degree felony.   *See* TEX. PENAL CODE § 19.04(b).

## POTENTIAL ERRORS CONSIDERED BY COUNSEL

Counsel considered the following point of errors on appeal:

(1)     Whether the deadly weapon finding entered by the trial court was supported by the jury's verdict.

In this case, the jury's verdict on the issue of whether a deadly weapon was used or exhibited during the commission of the offense is contained within the application paragraph of the jury charge, and not a special issue instruction or verdict.   Therefore, the question is whether that implied finding is sufficient to support the Court's deadly weapon finding included in the judgment.

11

In *Lafleur v. State*, the Court of Criminal Appeals held that Courts of Appeal may look to the application paragraph of a jury charge to determine if the express deadly weapon allegation in that portion of the jury charge matches the deadly weapon allegation in the indictment for the charged offense. If so, the trial court may enter a deadly weapon finding in the judgment based upon the jury's verdict of guilt, without a special verdict form or special issue instruction. *Lafleur v. State*, 106 S.W.3d 91, 92 (Tex. Crim. App. 2003).

Such is the case here, the deadly weapon allegation alleged in the indictment matches the deadly weapon allegation contained in the application paragraph. Thus, it is counsel's opinion that no point of error lies with respect to this issue.

> (2)     Whether the parole instruction in the punishment phase jury charge was accurate.

The parole instruction in the jury charge stated:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four (4) years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

(CR: 39).    This instruction tracks the language of Texas Code of Criminal Procedure Article 37.07 Section 4, the relevant statute for the charged offense in this case.    TEX. CODE CRIM. PRO. Art. 37.07 § 4.    Therefore, no point of error

12

lies with respect to this issue.

> (3) Whether Appellant's sentence exceeded the proper range of punishment.

A punishment which falls within the statutory range is not excessive, cruel, or unusual. *Gaines v. State*, 479 S.W.2d 678, 679 (Tex. Crim. App. 1972); *See also Jordan v. State* 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972). It is counsel's opinion that the punishment assessed was not excessive because Appellant's punishment fell within the statutory punishment range for the offense alleged. Specifically, Appellant faced a punishment range for that of a second-degree felony, namely: two to twenty years in prison or probation. *See* TEX. PENAL CODE § 12.33(a); TEX. PENAL CODE § 19.04(b). Appellant was sentenced to eight years in prison, which is within that punishment range. In fact, the State asked for a maximum punishment of twenty years, but the jury assessed a punishment of less than half that amount.

Accordingly, it is counsel's opinion that no point of error lies with respect to this issue.

> (4) Whether lay witnesses opinion testimony that Appellant was driving "recklessly" was admissible at trial.

At trial, Alisa Cummings and Domonic Cummings both testified that they observed Appellant driving "recklessly" just prior to the accident in this case. The question is whether their lay witness opinions were admissible at trial.

Texas Rule of Evidence 701 states that a lay witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R. EVID. 701. The initial requirement that an opinion be rationally based on the perceptions of the witness is composed of two parts. *Fairow v. State*, 943 S.W.2d 895, 899-900 (Tex. Crim. App. 1997). "First, the witness must establish personal knowledge of the events from which his opinion is drawn and, second, the opinion drawn must be rationally based on that knowledge." *Id.* Accordingly, the proponent of lay-opinion testimony must establish that the witness has personal knowledge of the events upon which his opinion is based. *Id.* If the proponent of the opinion cannot establish personal knowledge on the part of the testifying witness, the trial court should exclude the testimony. *Id*.; *see also Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994); *McMillan v. State*, 754 S.W.2d 422, 425 (Tex. App. -- Eastland 1988) (holding that a lay-witness opinion based on

14

hearsay was inadmissible).

The second requirement for admissibility under rule 701 is that the opinion be helpful to the trier of fact to either understand the witness's testimony or to determine a fact in issue. TEX. R. EVID. 701. A lay witness's opinion as to a mental state is properly excluded when the witness has not been qualified as an expert or shown to know the legal definition of said mental state. *Fairow v. State*, 943 S.W.2d at 900; *see also Lum v. State*, 903 S.W.2d 365, 370 (Tex. App. -- Texarkana 1995).

As a preliminary matter, defense counsel did not object to this testimony. It is well-settled that as a prerequisite to presenting a point of error for appellate review, the record must show that the complaint in question was made to the trial court by a timely request, objection, or motion, and the trial court ruled on the request, objection, or motion. TEX. R. APP. P. 33.1; *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). Because defense counsel did not object to the testimony in question, it is not preserved for appellate review.

Further, both Alisa Cummings and Domonic Cummings testified to what they saw and perceived on the night of the accident. Their opinion was rationally based on their perception and was helpful to a clear understanding of their testimony or the determination of a fact in issue. TEX. R. EVID. 701. Alisa

15

demonstrated her knowledge of the meaning of the word "reckless" and Domonic

was not asked. That being the case, their opinions as to recklessness were

admissible at trial. TEX. R. EVID. 701; *Fairow v. State*, 943 S.W.2d at 900. As a

result, no point of error lies with respect to this issue.

> (5) Whether the definition of "recklessness" in the jury charge matched the statutory language of Texas Penal Code Section 6.03(c).

In this case, the jury was instructed as follows:

> A person acts recklessly, or is reckless, with respect to the result of his conduct, when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(CR: 32-33). Texas Penal Code Section 6.03(c) reads:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE § 6.03(c).

The definition of "recklessness" as contained in the jury charge,

substantially tracked the statutory language of Texas Penal Code Section 6.03(c).

16

Thus, no point of error lies with respect to this issue.

(6)     Whether any jurors were impaneled over Appellant's objection for cause.

In the present case, defense counsel and the State agreed to their strikes for cause of potential jurors and defense counsel did not object to any further venire members.   (RR5: 112-13).   Thus, no point of error lies with respect to this issue. *Jacobs v. State*, 787 S.W.2d 397, 405 (Tex. Crim. App. 1990), *citing Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989) (holding that multi-step process must be followed to preserve error regarding an objectionable juror).

(7)     Whether the evidence was sufficient to support Appellant's conviction.

The Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010).   When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

17

Pursuant to Texas Penal Code Section 19.04, the State was required to prove beyond a reasonable doubt that Appellant recklessly caused Harvey's death. TEX. PENAL CODE § 19.04. At trial, two witnesses testified that Appellant was driving recklessly and, viewing the evidence in the light most favorable to the jury's verdict, Appellant told an officer at the scene the accident was his fault. Additionally, the crash event data recorder indicated Appellant's vehicle was traveling at 103 miles per hour when it impacted Epp's vehicle, causing the accident that resulted in Harvey's death. Further, at the punishment phase of trial, Appellant's own attorney told the jury during closing argument, "I can't get up here with good conscience and argue he didn't do this. We all know what he did." (RR8: 63).

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. As such, no point of error lies with respect to this issue.

## CONCLUSION

There are no points of error, which, in good conscience, could be raised in this appeal.

18

## NOTICE TO APPELLANT

The undersigned has forwarded a copy of this motion to withdraw and a letter explaining Appellant's rights, as well as the procedures to be followed when a brief is filed by counsel indicating that the appeal is frivolous and without merit, to Appellant. The letter also informs Appellant of his right to file a *pro se* petition for discretionary review. In addition to the letter, the undersigned has also forwarded to Appellant a Motion for *Pro Se* Access to the Appellate Record so that Appellant can obtain the necessary records to file a brief, should he choose to do so. A true and correct copy of such letter is attached hereto.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Kristen Jernigan, court-appointed counsel for Appellant in the above styled and numbered cause respectfully prays that, after providing Appellant an opportunity to submit a *pro se* brief, this Honorable Court of Appeals will review the appellate record to make an independent determination of whether there are grounds upon which to appeal. The undersigned also prays that the Court will grant this motion to withdraw.

Respectfully submitted,

_____/s/ Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Anders* Brief in support of Counsel's Motion to Withdraw has been mailed on October 10, 2016, to the Bell County District Attorney's Office, P.O. Box 540, Belton, Texas 76513.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document consists of 6,126 words in compliance with Texas Rule of Appellate Procedure 9.4.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the 264th Judicial District Court of
Bell County, Texas
Cause Number 74451

_____

**KEEVIN DASHAWN BYRD, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**CERTIFICATE OF COUNSEL**
_____

In compliance with the requirements of *Anders v. California*, 386 U.S. 378 (1967), I, Kristen Jernigan, court-appointed counsel for Appellant, Keevin Dashawn Byrd, in the above-referenced appeal, do hereby verify, in writing, to the Court that I have:

1. notified Appellant that I filed a motion to withdraw as counsel with an accompanying *Anders* brief, and provided a copy of each to Appellant;

2. informed Appellant of his right to file a *pro se* response identifying what he believes to be meritorious grounds to be raised in his appeal, should he so

22

desire;

3. advised Appellant of his right to review the appellate record, should he wish to do so, preparatory to filing that response;

4. explained the process for obtaining the appellate record, provided a Motion for *Pro Se* Access to the Appellate Record lacking only Appellant's signature and the date, and provided the mailing address for this Court; and

5. informed Appellant of his right to seek discretionary review *pro se* should this Court declare his appeal frivolous.

Respectfully submitted,

/s/ Kristen Jernigan

_____

Kristen Jernigan